IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| PATRICIA D. DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13CV373 |
| | ) | |
| CAROLYN COLVIN, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION, ORDER, AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

Plaintiff Patricia D. Davis ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Social Security Act (the "Act"). The Parties have filed cross-motions for judgment [Doc. #11; Doc. #13], and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff filed her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") on January 5, 2010, alleging a disability onset date of November 22, 2003. Her applications were denied initially and upon reconsideration. Thereafter, she requested a hearing de novo before an Administrative Law Judge ("ALJ"). On January 18, 2012, without the assistance of an attorney or other

representative, Plaintiff appeared and testified at the hearing. The ALJ ultimately determined that Plaintiff was not disabled within the meaning of the Act and, on January 14, 2013, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 5-12).[1]

In making his disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.
>
> 2. The claimant has not engaged in substantial gainful activity since November 22, 2003, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: right shoulder injury requiring acromioplasty, degenerative disk disease of the cervical spine; and a history of bronchial asthma (20 CFR 404.1520(c) and 416.920(c)).
>
> . . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> . . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. #9].

defined in 20 CFR 404.1567(c) and 416.967(c) except no overhead reaching or lifting with the right upper extremity; no more than occasional push/pull with the right (dominant) upper extremity due to pain and decreased range of motion; no exposure to excessive dust, fumes, gases, smoke, etc.

(Tr. at 32-33.)

The ALJ determined that the demands of Plaintiff's past relevant work, as described by Plaintiff, exceeded the above residual functional capacity ("RFC"). However, the ALJ then considered Plaintiff's age, education, work experience, and RFC in conjunction with the Medical-Vocational Guidelines contained in 20 C.F.R. Part 404, Subpart P, Appendix 2, and found that Plaintiff could perform other jobs that exist in significant numbers in the national economy. Accordingly, he concluded that Plaintiff was not under a "disability" as defined in the Act, from her alleged onset date through the date of the decision. (Tr. at 37.)

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled."

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

III.  DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" in the period between her alleged onset date through the date of the hearing. She therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from three severe impairments: right shoulder injury requiring acromioplasty, degenerative disc disease of the cervical spine, and a history of bronchial asthma. (Tr. at 32.) Although the ALJ found at step three that none of these impairments met or equaled a disability listing, he determined that Plaintiff could only perform medium work with further limitations, such that she could not return to her past relevant work under step four of the analysis. (Tr. at 32-36.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, she could perform other jobs available in the community and was therefore not disabled. (Tr. at 37.)

Plaintiff, who appears *pro se* in this forum, now claims that the ALJ erred in making his disability determination in several respects. Among her contentions, Plaintiff challenges the ALJ's failure to include her lower back impairment as a severe impairment at step two, and also challenges the ALJ's determination of her RFC. As discussed below, the Court concludes that the ALJ's decision fails to accurately reflect Plaintiff's treatment records and fails to consider a 2010 consultative examination by Dr. Rosenbloom, and as a result, the Court is unable to properly review the decision or determine whether substantial evidence

7

supports the ALJ's conclusions. As a result, for the reasons discussed below, the Court recommends that this matter be remanded for further consideration.

A. Severe Impairments

At step two of the sequential analysis, the ALJ found that Plaintiff has severe impairments of right shoulder injury requiring acromioplasty, degenerative disk disease of the cervical spine, and a history of bronchial asthma. Plaintiff challenges the ALJ's omission of her lumbar spine pain from among those impairments.

A severe impairment is an impairment or combination of impairments which "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520, 416.920. "Ordinarily, this is not a difficult hurdle for the claimant to clear[.]" Albright v. Comm'r of Soc. Sec. Admin., 174 F.3d 473, 474 n1. (4th Cir. 1999). In this case, in considering whether Plaintiff's lumbar spine pain constituted a severe impairment, the ALJ stated:

> Recently, the claimant underwent a magnetic resonance scan of her lumbar spine on January 16, 2012. That study revealed a left paracentral disk herniation at L5-S1 that markedly narrows the left neural foramen and disk material abuts both the traversing and exiting nerves. Ms. Davis was seen at UNC Health Care on January 4, 2012, complaining of back pain when standing and walking. On January 19m, 2010, [sic] she was described [sic] non-steroidal anti-inflammatory medication and told to exercise as tolerated. This impairment does not meet the 12 month durational requirements of the Social Security Act, and the undersigned therefore finds it to be "non-severe."

(Tr. at 33 (internal citations omitted).)

As an initial matter, the Defendant agrees that the date provided as "January 19m, 2010" should instead be January 9, 2012. (Tr. at 507-08.) Moreover, as it relates specifically to Plaintiff's spine, it appears, as the ALJ noted, that Plaintiff was seen at UNC Health Care on January 4, 2012 with the chief complaint of neck pain and low back pain. (Tr. at 500.) However, as a result of that appointment, only an MRI of Plaintiff's cervical spine was initially ordered (Tr. at 501), which Plaintiff underwent on January 8, 2012 (Tr. at 503). Those results were reviewed with Plaintiff on January 9, 2012 by Elizabeth Thompson, A.N.P. (Tr. at 505). Also on January 9, 2012, Plaintiff was seen with respect to her "bilateral hip pain" and was prescribed "anti-inflammatory medications" and recommended "activity as tolerated." Plaintiff then attended an appointment four days later on January 13, 2012, again with Elizabeth Thompson at UNC Health Care. (Tr. at 511.) It was as a result of that later appointment that an MRI of Plaintiff's lumbar spine was ordered. (Tr. at 511.) Those results, dated January 15, 2012, reveal the "left paracentral disk herniation" referred to the first sentence of the ALJ's above-cited paragraph. With respect to follow-up subsequent to these results, a note from January 17, 2012 notes that: "Patient was called and notified of MRI results. I explained to her that I have sent referral to Pain. She verbalized understanding." (Tr. at 515.) Thus, the reference to anti-inflammatories and exercise as tolerated for her bilateral hip pain was recommended prior to the MRI, and with respect to her low back pain, a further referral was made to the pain clinic based on the MRI results.

9

Moreover, as set out in the ALJ's decision, the ALJ decided to omit Plaintiff's lumbar spine pain as a severe impairment because, based on his review, it occurred only in January 2012 and therefore did not meet the 12-month durational requirement. However, the ALJ makes no mention of consultive examiner Alan Rosenbloom, M.D.'s February 9, 2010 report, in which he noted his impression of "[c]ervical and lumbar disk disease with possible right sciatic radiculopathy." (Tr. at 336.) In his discussion with regard to Plaintiff, Dr. Rosenbloom wrote:

> The patient presently presents with a history of a right brachial plexus injury with severe problems with her right upper extremity related to pain. In addition, she has documented cervical disk disease on MRI. *She has low back pain, which has not been fully investigated and symptoms suggest of a right sciatic radiculopathy and one can assume that she probably has disk disease in her lumbar spine as well.* She has bronchial asthma and significant decrease in exercise tolerance related to it, but physical examination, in terms of her lungs, appears normal. *The patient's present condition affects her ability to sit, stand, move about, lift and carry as well as handle objects all related to her brachial plexus injury, right upper extremity, neck and back pain as well as some dyspnea on exertion.* She can hear, speak, and travel.

(Tr. at 336 (emphasis added).) Given the lack of discussion of this report at any point in the ALJ's decision, it is not clear whether the ALJ considered Dr. Rosenbloom's impressions but nonetheless concluded that Plaintiff's lumbar spine pain was non-severe, or simply overlooked this piece of the record. In addition, Plaintiff points to additional medical records reflecting her lower back impairment, including an emergency room visit on September 4, 2009 for back pain (Tr. at 412-415, 486-489)[4] and an emergency room visit on

---

[4] This report includes a diagnosis of back strain and hip pain/bursitis (Tr. at 413), and clinical impressions including hip bursitis, lumbar strain, and abdominal pain (Tr. at 415). The ALJ does subsequently refer to

10

October 10, 2010 for neck, shoulder, and back pain (Tr. at 416-419). In light of this treatment for back pain in September 2009 and October 2010, and Dr. Rosenbloom's assessment in February 2010, and without any analysis of these documents by the ALJ reconciling these records with the conclusion that the lumbar spine impairment reflected in the January 2012 MRI did not meet the 12-month durational requirement, the Court cannot say that the ALJ's determination of Plaintiff's severe impairments is supported by substantial evidence.[5]

---

this visit, but not in addressing the durational requirement for the lumbar spine impairment. Moreover, the ALJ refers to the x-ray from the visit as "negative," while Plaintiff notes that the x-rays actually reflect "[c]hronic deformity of the left hemipelvis." (Tr. at 34, 439.)

[5] In the briefing, Defendant contends that Plaintiff's lumbar pain was not a severe impairment because it did not significantly limit Plaintiff's ability to do basic work activities. However, the ALJ did not rely on such a finding, and instead specifically omitted the lumbar pain as a severe impairment because it did not meet the 12-month durational requirement. Defendant's contention on this issue risks attempting to "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005) (citing SEC v. Chenery Corp., 318 U.S. 80, 87–88, 63 S. Ct. 454, 87 L. Ed. 626 (1943)); see also Anderson v. Colvin, No. 1:10CV671, 2014 WL 1224726, at *1 (M.D.N.C. March 25, 2014) (Osteen, C.J.) (noting that this Court's "[r]eview of the ALJ's ruling is limited further by the so-called 'Chenery Doctrine,' which prohibits courts from considering post hoc rationalizations in defense of administrative agency decisions. . . . Under the doctrine, a reviewing court 'must judge the propriety of [agency] action solely by the grounds invoked by the agency. . . . If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis'").

The Court also notes that the severity finding at step two is merely a threshold determination. See Felton-Miller v. Astrue, 459 F. App'x 226, 230 (4th Cir. 2011) (unpublished). Because the ALJ progressed to step three based on other severe impairments, his failure to include Plaintiff's lumbar spine would be moot had he discussed any impairments related to it at step 3. However, the ALJ did not do so.

11

B.  Residual Functional Capacity

Although the foregoing discussion alone warrants remand of this matter, the Court notes that Plaintiff also alleges additional factual errors or omissions, particularly with respect to the ALJ's determination of her RFC. In this regard, the ALJ found that:

> claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except no overhead reaching or lifting with the right upper extremity; no more than occasional push/pull with the right (dominant) upper extremity due to pain and decreased range of motion; no exposure to dust, fumes, gases, smoke, etc.

(Tr. at 33.) As part of this determination, the ALJ concluded that Plaintiff was limited to "occasionally lifting no more than 50 pounds and frequently lifting 20 pounds." (Tr. at 35.)

However, as noted above, the ALJ's analysis omits Dr. Rosenbloom's consultive examination in its entirety. The ALJ generally noted that "[c]onsideration has been given to the reports of state agency medical consultants as well as other treating, examining and non-examining medical sources contained in the record." (Tr. at 36.) However, there is no reference to or analysis of Dr. Rosenbloom's examination, including his conclusion that Plaintiff's condition "affects her ability to sit, stand, move about, lift, and carry as well as handle objects all related to her brachial plexus injury, right upper extremity, neck and back pain as well as some dyspnea on exertion." (Tr. at 336.) Dr. Rosenbloom's 2010 consultative examination found "severe decreased range of motion of the cervical spine in all directions with pain on range of motion testing, especially on the left," "severe decreased range of motion of the right shoulder in all directions with pain on range of motion testing," "full

12

range of motion of the left shoulder with pain in the left neck associated with range of motion," and "[s]he can manipulate small objects well with her left hand, not at all with her right hand." (Tr. at 335.) These findings provide some support for Plaintiff's reported symptoms, and also include limitations not reflected in the RFC, particularly regarding the decreased range of motion in her cervical spine and the limitations on her right arm and shoulder, including her inability to manipulate objects with her right hand.[6] Because Dr. Rosenbloom's analysis was not addressed by the ALJ, the Court cannot determine whether or how these findings would affect the ALJ's RFC determination and the determination as to Plaintiff's credibility. See Reinhardt v. Colvin, No. 3:14-cv-00488, 2015 WL 1756480, at *4 (W.D.N.C. Apr. 17, 2015) ("[F]ailure to consider a favorable medical opinion on a relevant issue from a doctor that the agency employed is not easily dismissed as a harmless error inasmuch as the Commissioner's own regulations provide that 'we will evaluate every medical opinion we receive.' 20 C.F.R. § 404.1527.").

Moreover, in his discussion regarding Plaintiff's RFC, the ALJ wrote, in another description of Plaintiff's January 2012 treatment at UNC Health Care for her cervical spine, that:

> [Plaintiff] returned to UNC Health Care on January 4, 2012, complaining of extreme weakness and pain in her right arm and some tingling in her left hand. She was seen and treated by orthopedist Michael Menz, M.D., who diagnosed

---

[6] Consistent with this determination, state agency medical consultants who examined Plaintiff's case noted limitations in handling and fingering. (Tr. at 250, 276.) The ALJ relied on the state agency determination but failed to address this limitation. See also Social Security Ruling 83-10 (noting that with respect to medium work generally, "[u]se of the arms and hands is necessary to grasp, hold, and turn objects").

13

> bursitis of the hip. A MRI scan was performed on January 8, 2012 that revealed a herniated disk at the C2-3 level that result in no significant neuroforaminal or central canal stenosis; an asymmetric spur complex at the C3-4 level that caused mild effacement of the thecal sac anteriorly, and severe narrowing of the left and mild narrowing of the right neural foramen. At the C4-5 disk, a disk spur complex resulting in mild effacement of the thecal sac was noted. As Ms. Davis' symptoms have consistently and persistently been located in the right shoulder and arm, this study does not explain the etiology of her pain. No surgery was deemed necessary and the claimant was again referred to formal pain management.

(Tr. at 35 (internal citations omitted).) Plaintiff contends that this analysis of her records is "mixed up." As Plaintiff notes, although it is accurate that she returned to UNC Health Care on January 4, 2012, the diagnosis of hip bursitis occurred in September 2009 at Alamance Regional Medical Center, during an emergency room visit that also included treatment for lumbar strain, with a referral to follow-up in 5 days with Dr. Menz. (Tr. at 413, 486-89.) The reason for its inclusion in the foregoing discussion is not apparent. Moreover, although the ALJ describes the January 8, 2012 MRI results at C2-C3, C3-C4, and C4-C5 (Tr. at 35), he omits any mention of the "severe narrowing of the neural foramina bilaterally" found at C5-C6 and at C6-C7 (Tr. at 504). Indeed, the records of Plaintiff's subsequent January 9, 2012, visit to UNC Hospitals to discuss her cervical MRI results describe the findings at C6-C7 as the "most significant." (Tr. at 505.) Finally, the ALJ concluded that Plaintiff's cervical MRI did "not explain the etiology of her pain" in her right shoulder and arm (Tr. at 35). However, throughout the medical records, Plaintiff's right arm pain is attributed to her brachial plexus injury, which would not appear to be inconsistent with the results of the cervical MRI. Because it is not apparent whether an accurate reading

14

or consideration of the omitted results would weigh on the ALJ's apparent conclusions, this matter also warrants further consideration on remand, particularly as it relates to the formulation of the RFC and the evaluation of Plaintiff's credibility.[7]

Despite these factual inaccuracies, Defendant nonetheless urges the Court to find that substantial evidence supports the ALJ's findings. However, it is not this Court's role to weigh the evidence where it is not apparent that the ALJ based his opinion on an accurate reading of Plaintiff's medical history. The Court of Appeals for the Fourth Circuit has specifically noted that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (internal quotation omitted). In the present case, at bottom, the factual errors contained in the ALJ's decision, including mischaracterizations of Plaintiff's treatment and multiple significant omissions, lead the Court to conclude that the ALJ's decision is not supported by substantial evidence and that meaningful judicial review cannot be had. Cf. Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996) ("[W]e cannot uphold a decision by an administrative agency . . . if, while there is

---

[7] Plaintiff also notes additional issues regarding the ALJ's evaluation of her credibility, including in particular with respect to an accident involving a four-wheeler, which the ALJ viewed as involving Plaintiff riding the four-wheeler, but which Plaintiff contends involved being struck by the four-wheeler's trailer as her son drove past where she was standing. It appears that the ALJ's misunderstanding of this event was a significant factor in his determination that Plaintiff's activities were not consistent with her allegations of disabling pain. (Tr. at 36.) Given the other substantive issues set out above, the Court need not resolve that issue further, and leaves any further consideration of these issues for further determination on remand.

15

enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); Ryszetnyk v. Astrue, No. 12-CV-2431, 2014 WL 2986700, at *10 (E.D.N.Y. July 1, 2014) ("[T]he multiple factual errors made by the ALJ in summarizing Dr. Goodman's medical records lead this Court to conclude that the decision is not supported by substantial evidence and cannot stand."); see also Pratts v. Chater, 94 F.3d 34, 38 (2d Cir. 1996) (finding decision not supported by substantial evidence where ALJ committed factual errors while reviewing the medical records). Accordingly, this matter should be remanded for further consideration. See Meyer v. Astrue, 662 F.3d 700, 707 (4th Cir.2011) ("[A]ssessing the probative value of competing evidence is quintessentially the role of the fact finder."); Williams v. Colvin, No. 7:14-CV-150-BO, 2015 WL 3491044, at *3 ("Remand is appropriate when the ALJ fails to explain his reasoning and there is ambivalence in the medical record, precluding a court from 'meaningful review.'" (citing Radford v. Colvin, 734 F.3d 288, 296 (4th Cir.2013)).

Finally, the Court notes that to the extent that Plaintiff filed a subsequent Letter Motion [Doc. #22] again requesting review of the ALJ's errors, that request will be denied as moot in light of the determination set out above.

IT IS THEREFORE ORDERED that Plaintiff's Letter Motion [Doc. #22] is DENIED as moot.

IT IS RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence

16

four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #13] should be DENIED, and the Plaintiff's Motion for Judgment on the Pleadings [Doc. #11] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 21st day of July, 2015.

          /s/ Joi Elizabeth Peake
      United States Magistrate Judge